IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-266

 No. COA21-274

 Filed 19 April 2022

 Randolph County, No. 19 CVD 1606

 BRIAN R. TURNER, Plaintiff,

 v.

 LINDSEY OAKLEY (now LEGGE), Defendant.

 Appeal by Plaintiff from orders entered 31 July 2020 and 17 August 2020 by

 Judge Lee W. Gavin in Randolph County District Court. Heard in the Court of

 Appeals 25 January 2022.

 Lake Tillery Law, by Brooke M. Crump, for Plaintiff-Appellant.

 Cathy R. Stroupe for Defendant-Appellee.

 COLLINS, Judge.

¶1 This appeal stems from Plaintiff’s August 2018 motion to modify custody of the

 parties’ son, Matthew.1 Plaintiff argues that the trial court lacked jurisdiction to

 enter an order modifying custody, made a finding of fact not supported by substantial

 evidence, failed to find a nexus between the substantial change in circumstances and

 Matthew’s welfare, failed to make sufficient findings concerning evidence of child

 1 We use a pseudonym to protect the identity of the minor.
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

 abuse, and abused its discretion. After careful review, we affirm.

 I. Background

¶2 The parties are the parents of Matthew, a minor child born in March 2010.

 The parties were never married.

¶3 On 15 April 2013, Plaintiff filed a complaint in Rockingham County District

 Court seeking primary custody of Matthew. On 26 November 2013, the district court

 entered an order granting primary custody to Defendant and secondary custody to

 Plaintiff (“2013 Custody Order”). This order awarded the parties physical custody of

 Matthew as follows: Plaintiff had physical custody on “all weekends that [Defendant]

 must work”; Defendant had physical custody the weekend immediately following; and

 Plaintiff had physical custody “for the next two successive weekends immediately

 following[.]” The 2013 Custody Order also included a holiday schedule granting each

 party physical custody “for as close to equal time [as] is practical,” and a provision

 permitting each party custody for vacation purposes upon advance notice.

¶4 On 10 August 2018, Plaintiff filed an Ex Parte Motion for Emergency Custody

 and Modification of Prior Order on Custody (“Custody Motion”) seeking temporary

 and permanent custody of Matthew. Plaintiff alleged there had been a substantial

 and material change in circumstances affecting Matthew’s welfare since the entry of

 the 2013 Custody Order as follows:

 a. Since the school year ended, [Matthew] has primarily
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

 resided with Plaintiff.
 b. On March 29, 2018, Defendant called Plaintiff in a rage
 and said that she couldn’t do anything for [Matthew]
 while screaming at [Matthew] to go live with
 [D]efendant if that’s what [Matthew] wanted.
 c. [Matthew] has expressed concern that Defendant does
 not have time for him during the school week due to
 her busy schedule in the evenings including going to
 work and school, whereas she has enrolled in school on
 four different occasions.
 d. Defendant has not been keeping up with [Matthew’s]
 homework and has trouble communicating with
 teachers.
 e. Defendant currently has [Matthew] in therapy due to
 the strained relationship between Defendant and
 [Matthew].
 f. The current visitation schedule is not in the best
 interest of [Matthew] due to Defendant’s current
 mental state, Defendant’s threats to [Matthew], and
 Defendant’s strained relationship with [Matthew].
 g. Plaintiff has married and [Matthew] has a strong
 familial bond with both Plaintiff and Plaintiff’s wife.
 h. Modifying the schedule to give specific visitation times
 for Defendant’s visitations, and giving Plaintiff
 primary custody, will promote consistency and
 stability for [Matthew], which is in the best interests of
 [Matthew].

¶5 The trial court granted Plaintiff emergency full custody of Matthew by an ex

 parte order. Following a hearing on 29 August 2018, the trial court entered an order

 on 14 December 2018 granting Plaintiff “temporary primary physical and legal

 custody” of Matthew and awarding Defendant “supervised visitation at a time,
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

 location, frequency, and duration mutually agreed upon by the parties” (“Initial

 Emergency Custody Order”).

¶6 Defendant moved the court on 11 January 2019 to establish a visitation

 schedule (“Visitation Motion”). Defendant alleged that Plaintiff had “systematically

 denied” her requests for visitation under the Initial Emergency Custody Order and

 refused to communicate with Defendant.

¶7 On 8 February 2019, the trial court entered a Temporary Memorandum of

 Judgment/Order (“First Memorandum Order”) incorporating the parties’ agreement

 to permit Defendant certain supervised visitation with Matthew in person and by

 phone. On 5 March 2019, the trial court entered a Temporary Order adjusting the

 time at which Defendant was to have telephone visitation with Matthew.

¶8 The trial court entered an additional Temporary Memorandum of

 Judgment/Order on 5 April 2019 (“Second Memorandum Order”), containing another

 agreement by the parties to permit Defendant supervised visitation with Matthew in

 person and by phone. The Second Memorandum Order also provided that “[t]his

 matter is temporary in nature, entered without prejudice to either party” and ordered

 the case be transferred to Randolph County District Court. On 9 May 2019, the

 Rockingham County District Court entered a Temporary Order containing the same

 terms as the Second Memorandum Order.

¶9 Defendant responded to Plaintiff’s Custody Motion on 9 May 2019. The
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

 Randolph County District Court received the case file on 16 July 2019 and noticed a

 hearing on Plaintiff’s Custody Motion. The trial court heard Plaintiff’s motion on

 8 November 2019, 18 February 2020, and 7 July 2020.

¶ 10 On 31 July 2020, the trial court entered a Temporary Order directing Plaintiff

 to bring Matthew to Defendant’s home that evening, pending entry of a final order

 (“July 2020 Temporary Order”). Plaintiff filed a notice of appeal from the July 2020

 Temporary Order.2

¶ 11 The trial court entered a Custody Order on 17 August 2020 (“August 2020

 Custody Order”) which included the following pertinent findings of fact:

 5. That a Court Order which included provisions for child
 custody of [Matthew] was entered on or about November
 26, 2013, in Rockingham County, North Carolina District
 Court . . . . In said Order, Defendant was granted primary
 custody, control, and tuition of [Matthew], with Plaintiff
 exercising certain visitation. . . .

 6. That thereafter, Defendant relocated to Guilford
 County, North Carolina and continued to be the primary
 caregiver of [Matthew].

 7. That Defendant’s brother died unexpectedly in an
 automobile accident in 2017. Defendant and her brother
 were very close and Defendant had a hard time dealing
 with his death.

 8. That on August 8, 2018, Defendant was to pick up
 [Matthew] following summer visitation with Plaintiff.
 Defendant was under continued stress from dealing with

 2 Plaintiff raised no arguments concerning the July 2020 Temporary Order in his brief.
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

her brother’s death and was dealing with anxiety and
depression. She had suffered panic attacks for the two
weeks prior to August 8, 2018. Defendant had concerns
about her ability to care for [Matthew], and out of that
concern, Defendant asked Plaintiff’s wife to keep
[Matthew]. Plaintiff’s wife testified that Defendant had
developed a trust with Plaintiff’s wife and Plaintiff’s wife
agreed to keep [Matthew].

9. That after speaking with Plaintiff’s wife on August 8,
2018, Defendant voluntarily committed herself at Wesley
Long Hospital, Greensboro, North Carolina. Contrary to
the testimony of Plaintiff’s wife that they did not learn of
the hospitalization until the next week, the Defendant’s
husband informed the Plaintiff on August 9th of
Defendant’s hospitalization. Defendant was released from
Wesley Long Hospital on August 16, 2018.

10. That on August 10, 2018, Plaintiff obtained an ex parte
custody Order in Rockingham County District Court. A
return hearing was held on August 29, 2018. At the
hearing, the Court entered [the Initial Emergency Custody
Order] granting Plaintiff temporary custody and allowing
Defendant supervised visitation to be mutually agreed
upon by the parties.

11. Following the August 29, 2018 hearing Defendant was
in a state of shock at losing custody of [Matthew]. She was
assessed by Dr. Alexander Eksir (“Dr. Eksir”), a board-
certified licensed psychiatrist, who diagnosed her with a
severe episode of depression with psychotic symptoms.
Defendant voluntarily admitted herself to Moses Cone
Hospital on August 31, 2018 and was discharged on
September 5, 2018. Upon her discharge, Defendant was
stable and substantially improved.

12. That Defendant has followed up with Dr. Eksir who
described Defendant as a model patient. Dr. Eksir testified
that Defendant suffered a major depressive disorder that
is in remission. Dr. Eksir described Defendant as cured.
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

He testified that she is down to earth, involved and
engaged with no impairment. He has no concerns that
Defendant is a danger to herself or anyone else. She had
no problem with the birth of her second child. Dr. Eksir
has no concern about children being in Defendant’s care.

13. That notwithstanding the fact that the [Initial
Emergency Custody Order] provided for Defendant to have
supervised visitation with [Matthew], Plaintiff allowed
Defendant to have unsupervised visits with [Matthew]
during Thanksgiving 2018 and at Defendant’s home for
Christmas 2018. These visits went very well.

14. That Defendant asked Plaintiff many times for
expanded visits and a visitation schedule which Plaintiff
refused. That Plaintiff filed [the Visitation Motion] on
January 11, 2019 asking the (Rockingham County, North
Carolina) Court to set a visitation schedule. The parties
were in Court on February 8, 2019 but the Court was
unable to conduct a full hearing on Defendant’s motion.
The parties reached [the First Memorandum Order] for a
supervised visitation schedule, under which Defendant
was to have supervised visitation every Friday and
Saturday in Guilford County, North Carolina.

15. That Defendant noticed the matter back on for a review
of the [Initial Emergency Custody Order] in Rockingham
County District Court and the matter was set for hearing
on April 5, 2019.

16. That the parties returned to (Rockingham County,
North Carolina) Court on April 5, 2019 for the Court to
conduct a hearing and review of the[Initial Emergency
Custody Order]. Again, the Court was unable to conduct a
full hearing on said review and an oral motion was made
to change venue to Randolph County, North Carolina since
neither party now lived in Rockingham County, North
Carolina. [The Second Memorandum Order] was entered
under which, after two (2) Saturday visitations, Defendant
was to exercise supervised visitation every Sunday from
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

 1:00 p.m. to 5:00 p.m. at Freedom Park, Liberty, Randolph
 County, North Carolina. The (oral) change of venue was
 then granted and the matter was transferred to Randolph
 County, North Carolina.

 17. That since April 5, 2019, except for very limited
 exceptions, Plaintiff has only allowed Defendant
 supervised visitation with [Matthew] at Freedom Park, no
 matter the weather or the fact that Defendant had given
 birth to another child, and that child should not be in the
 open elements for four hours.

 18. That Plaintiff’s main complaint regarding the
 visitation between Defendant and [Matthew] was that the
 half-siblings were competitive with each other during said
 visitation, and that Defendant should only be the person
 visiting with [Matthew], despite the fact that [Matthew]
 had a step-father and half-siblings that only saw him 4
 hours each week. That despite repeated requests from
 Defendant, the Plaintiff refuses to allow any expanded
 visitation between Defendant and [Matthew] and no good
 cause has been shown for such refusal.

 19. That the paternal grandmother, who supervised most
 of the visits between Defendant and [Matthew], testified
 that the visits went very well, that [Matthew] is very
 bonded to the Defendant, that he loves his mother, and that
 the only concern she expressed was that [Matthew] would
 not get “one-on-one” attention because there are other
 children in Defendant’s home.

 20. That Defendant remains gainfully employed with
 Moses Cone Hospital and that her work schedule allows
 her to be home all but 5-7 days per month.

¶ 12 Based upon the foregoing findings of fact, the trial court concluded that “since

 the entry of the [2013 Custody Order] there has been a substantial change of

 circumstances that affect[s] the general welfare of” Matthew. The trial court further
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

 concluded that “it is in the best interest of [Matthew] that the [2013 Custody Order]

 be modified and that the parties shall have joint legal custody of” Matthew and it “is

 in the best interest, safety and general welfare of [Matthew that his] primary care,

 custody and control be placed with the Defendant, with Plaintiff exercising certain

 visitation with [Matthew] as more fully stated in the decretal portion of this Order.”

 The trial court granted the parties joint legal custody and Defendant primary

 physical custody. The trial court awarded Plaintiff visitation with Matthew as

 follows: (1) three weekends of each month, from 5 p.m. Friday until 7 p.m. Sunday;

 (2) a 30-day period during the school summer recess; (3) Father’s Day, a portion of

 Matthew’s birthday, and every other Christmas, Thanksgiving, and Easter holiday;

 and (4) other periods as the parties agree. Plaintiff gave notice of appeal from the

 August 2020 Custody Order.

 II. Discussion

 A. Trial Court’s Jurisdiction to Enter the August 2020 Custody Order

¶ 13 Plaintiff argues that the trial court lacked jurisdiction to enter the August 2020

 Custody Order. Though Plaintiff did not raise this argument before the trial court,

 the issue of subject matter jurisdiction may be raised for the first time on appeal. In

 re T.R.P., 360 N.C. 588, 595, 636 S.E.2d 787, 793 (2006). We review this issue de

 novo. McKoy v. McKoy, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010).

¶ 14 An existing order “for custody of a minor child may be modified or vacated at
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

 any time, upon motion in the cause and a showing of changed circumstances by either

 party or anyone interested.” N.C. Gen. Stat. § 50-13.7(a) (2020). “[T]he jurisdiction

 of the court entering [a child custody] decree continues as long as the minor child

 whose custody is the subject of the decree remains within its jurisdiction.” Stanback

 v. Stanback, 287 N.C. 448, 456, 215 S.E.2d 30, 36 (1975) (citations omitted).

¶ 15 Plaintiff asserts that the trial court was deprived of jurisdiction to enter the

 August 2020 Custody Order because his Custody Motion was no longer pending.

 Plaintiff contends that the trial court “overlooked the fact that multiple orders had

 been entered since Plaintiff filed” his Custody Motion.

¶ 16 Contrary to Plaintiff’s assertion, until the August 2020 Custody Order, none of

 the trial court’s orders finally resolved Plaintiff’s claim for permanent custody in his

 Custody Motion. The 10 August 2018 ex parte order granted “emergency full custody”

 to Plaintiff and set the matter for a review hearing. The Initial Emergency Custody

 Order granted Plaintiff only “temporary primary physical and legal custody,” with

 Defendant’s visitation to be “mutually agreed upon by the parties.” Following

 Defendant’s Visitation Motion, the trial court entered the First Memorandum Order

 which set a schedule of visitation between Defendant and Matthew. The subsequent

 5 March 2019 Temporary Order merely adjusted the time at which Defendant was to

 have telephone visitation with Matthew. This order noted that it embodied only a

 “temporary agreement as to custody and visitation, pending further hearing and/or
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

 disposition by the Court.” The Second Memorandum Order set a new schedule of in-

 person and telephonic visits between Defendant and Matthew and expressly specified

 that it was “temporary in nature, entered without prejudice to either party.” The

 9 May 2019 Temporary Order contained these same terms. Defendant filed a

 response to Plaintiff’s Custody Motion on 9 May 2019 and the trial court listed

 Plaintiff’s Custody Motion as one of the matters for hearing on three consecutive

 notices of hearing. At the beginning of the 8 November 2019 hearing, Counsel for

 Plaintiff answered affirmatively when the trial court inquired, “So you have a motion

 to modify, correct?”

¶ 17 Moreover, even if Plaintiff’s Custody Motion was no longer technically pending,

 “the absence of a motion to modify . . . does not divest the district court of jurisdiction

 to act under the purview of” the modification provision in N.C. Gen. Stat. § 50-13.7(a).

 Catawba Cnty. ex rel. Rackley v. Loggins, 370 N.C. 83, 94, 804 S.E.2d 474, 482 (2017).

 “A primary purpose of a requirement to file a motion in order to modify” is to “make

 the court aware of important new facts unknown to the court at the time of the prior

 custody decree.” Id. at 96, 804 S.E.2d at 483 (quotation marks and citation omitted).

 Where the conduct of the parties satisfies this purpose, no motion is required.

 Summerville v. Summerville, 259 N.C. App. 228, 241, 814 S.E.2d 887, 897 (2018). In

 the present case the parties amply apprised the trial court of new facts unknown at

 the time of the 2013 Custody Order: Plaintiff filed the Custody Motion, Defendant
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

 filed a response, and the parties appeared for multiple hearings during which the

 trial court heard testimony.

¶ 18 The trial court was not deprived of jurisdiction to modify custody of Matthew

 and the August 2020 Custody Order is not void for lack of jurisdiction.

 B. Substantive Challenges to the August 2020 Custody Order

¶ 19 Plaintiff also raises several substantive challenges to the August 2020 Custody

 Order. A “trial court’s examination of whether to modify an existing child custody

 order is twofold.” Shipman v. Shipman, 357 N.C. 471, 474, 586 S.E.2d 250, 253

 (2003).

 The trial court must determine whether there was a
 change in circumstances and then must examine whether
 such a change affected the minor child. If . . . the trial court
 determines that there has been a substantial change in
 circumstances and that the change affected the welfare of
 the child, the court must then examine whether a change
 in custody is in the child’s best interests. If the trial court
 concludes that modification is in the child’s best interests,
 only then may the court order a modification of the original
 custody order.

 Id.

¶ 20 “In a child custody case, the trial court’s findings of fact are conclusive on

 appeal if supported by substantial evidence, even if there is sufficient evidence to

 support contrary findings.” Peters v. Pennington, 210 N.C. App. 1, 12-13, 707 S.E.2d

 724, 733 (2011) (citation omitted). “Substantial evidence is such relevant evidence as
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

 a reasonable mind might accept as adequate to support a conclusion.” Id. at 13, 707

 S.E.2d at 733 (quoting State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)).

 We review a trial court’s decision in a child custody case for an abuse of discretion.

 Id. An abuse of discretion occurs only where “the court’s decision is manifestly

 unsupported by reason or is so arbitrary that it could not have been the result of a

 reasoned decision.” Barton v. Sutton, 152 N.C. App. 706, 710, 568 S.E.2d 264, 266

 (2002) (quotation marks and citation omitted).

 1. Finding Concerning Dr. Eksir’s Testimony

¶ 21 Plaintiff challenges the trial court’s finding that “Dr. Eksir described

 Defendant as cured.”

¶ 22 Dr. Eksir testified that when Defendant was discharged in the fall of 2018, her

 condition was not yet resolved but was stable and “substantially improved.” Dr. Eksir

 explained that at a follow-up appointment, Defendant’s condition was sufficiently

 improved to taper her off of some of the medication she had been prescribed during

 her hospitalization. Dr. Eksir testified that Defendant’s major depressive disorder

 was in remission and defined “remission” as the point

 when medication that’s provided or whatever treatment
 has provided full reconstitution of a person’s mood such
 that they’re able to function and behave and act and are
 existing without any ongoing symptoms of their psychiatric
 illness. It’s essentially like, you know, cured so to speak.

 According to Dr. Eksir, Defendant maintained stability after her discharge from the
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

 hospital and her prognosis was “excellent.” Dr. Eksir’s testimony concerning

 Defendant’s improvement is substantial evidence in support of the trial court’s

 finding that Dr. Eksir “described Defendant as cured.”

¶ 23 Plaintiff emphasizes that none of the medical records read at the hearing state

 that Defendant was “cured” and contends that “it is common knowledge that if you

 have to take medicine for something, then you are not ‘cured.’” These arguments are

 misplaced because the trial court only found that Dr. Eksir “described Defendant as

 cured,” a finding sufficiently supported by Dr. Eksir’s testimony.

¶ 24 Without challenging any specific finding, Plaintiff also contends that the trial

 court gave “far too much weight” to Dr. Eksir’s testimony concerning Defendant’s

 current mental status. Plaintiff suggests that Dr. Eksir’s testimony warranted less

 weight “considering that Dr. Eksir only sees the Defendant approximately every three

 months.” This argument is unavailing because

 [a] trial judge passes upon the credibility of the witnesses
 and the weight to be given their testimony and the
 reasonable inferences to be drawn therefrom. Issues of
 witness credibility are to be resolved by the trial judge. It
 is clear beyond the need for multiple citation that the trial
 judge, sitting without a jury, has discretion as finder of fact
 with respect to the weight and credibility that attaches to
 the evidence. . . . [I]t is not for an appellate court to
 determine de novo the weight and credibility to be given to
 evidence disclosed by the record on appeal.

 Phelps v. Phelps, 337 N.C. 344, 357, 446 S.E.2d 17, 25 (1994) (quotation marks,
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

 brackets, and citations omitted). Plaintiff’s argument is overruled.

 2. Nexus Between Change in Circumstances and Matthew’s Welfare

¶ 25 Plaintiff also argues that the trial court erred by failing to find a nexus between

 the substantial change in circumstances and Matthew’s welfare and by failing to

 examine whether modification was in Matthew’s best interests. We disagree.

¶ 26 “Unless the effect of the [substantial change in circumstances] on the children

 is ‘self-evident,’ the trial court must find sufficient evidence of a nexus between the

 change in circumstances and the welfare of the children.” Stephens v. Stephens, 213

 N.C. App. 495, 499, 715 S.E.2d 168, 172 (2011) (citing Shipman, 357 N.C. at 478, 586

 S.E.2d at 255-56).

¶ 27 The trial court made findings concerning Defendant’s mental health

 difficulties, her improvement upon hospitalization and treatment, her successful

 visitation with Matthew, and her continued employment and flexible work schedule.

 The trial court’s findings3 show that Defendant’s mental health crisis initially

 affected not only her ability to care for herself, but her ability to care for Matthew.

 The findings further show that Defendant improved following hospitalization and

 3 In his principal brief, Plaintiff challenges only the trial court’s finding that “Dr. Eksir

 described Defendant as cured.” The remaining unchallenged findings of fact are binding on
 appeal, Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991), regardless of
 Plaintiff’s belated attempt to challenge multiple additional findings in his reply brief, see
 McLean v. Spaulding, 273 N.C. App. 434, 441, 849 S.E.2d 73, 79 (2020) (“Under Rule 28(b)(6)
 of the North Carolina Rules of Appellate Procedure, where a party fails to assert a claim in
 its principal brief, it abandons that issue and cannot revive the issue via reply brief.”).
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

 treatment and consequently has been able to exercise successful visitation with

 Matthew. Based upon these findings, the trial court concluded that there had been a

 substantial change in circumstances that affected Matthew’s welfare since entry of

 the 2013 Custody Order. The trial court then concluded that it was in Matthew’s best

 interests to modify the 2013 Custody Order to award joint custody to the parties, with

 primary custody to Defendant.

¶ 28 The trial court complied with its duty to determine whether there was a

 substantial change in circumstances, whether that change in circumstances affected

 Matthew’s welfare, and whether modification of custody was in Matthew’s best

 interests, Shipman, 357 N.C. at 474, 586 S.E.2d at 253, and its findings reflect

 “sufficient evidence of a nexus between the change in circumstances and the welfare

 of” Matthew, Stephens, 213 N.C. App. at 499, 715 S.E.2d at 172.

 3. Evidence of Child Abuse

¶ 29 Plaintiff next argues that the trial court failed to make written findings

 concerning “allegations of child abuse” and “expert testimony . . . presented regarding

 the psychological abuse of” Matthew.

¶ 30 When determining the best interests of a child, the trial court

 shall consider all relevant factors including acts of
 domestic violence between the parties, the safety of the
 child, and the safety of either party from domestic violence
 by the other party. An order for custody must include
 written findings of fact that reflect the consideration of
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

 each of these factors and that support the determination of
 what is in the best interest of the child.

 N.C. Gen. Stat. § 50-13.2(a) (2020). “Any evidence of child abuse is of the utmost

 concern in determining whether granting custody to a particular party will best

 promote the interest and welfare of the child,” and the trial court is obligated “to

 resolve any evidence of [abuse] in its findings of fact.” Dixon v. Dixon, 67 N.C. App.

 73, 78-79, 312 S.E.2d 669, 673 (1984).

¶ 31 In Scott v. Scott, the defendant argued that the trial court erred by failing to

 make detailed findings regarding child abuse. 157 N.C. App. 382, 387, 579 S.E.2d

 431, 435 (2003). There was evidence that the plaintiff spanked the child, but there

 was “also evidence that the spanking did not inflict serious injury.” Id. Additionally,

 the defendant “made no attempt to seek medical attention for the [c]hild, and there

 was no evidence that the spanking left more than temporary red marks.” Id. This

 Court held that this evidence did not obligate the trial court to make specific findings

 concerning abuse. Id. (citing N.C. Gen. Stat. § 7B-101).

¶ 32 Here, though Plaintiff did not allege abuse in his Custody Motion, Plaintiff

 contends he introduced evidence of physical and psychological abuse. However, as in

 Scott, Plaintiff has not introduced evidence that the isolated incidents of spanking or

 yelling he identified either “created serious emotional damage to [Matthew] . . .

 evidenced by [Matthew’s] severe anxiety, depression, withdrawal, or aggressive
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

 behavior toward himself or others,” N.C. Gen. Stat. § 7B-101(1)(e) (2020), or evidence

 of any “serious physical injury” or “substantial risk of serious physical injury,” N.C.

 Gen. Stat. § 7B-101(1)(a), (b) (2020). Nor was there evidence that Plaintiff sought

 treatment for Matthew. To the contrary, Plaintiff testified that he did not have

 Matthew in therapy and he never thought Matthew needed to see a psychiatrist.

 Plaintiff points to Dr. Eksir’s testimony, but Dr. Eksir merely gave a general

 definition of emotional abuse and confirmed that emotional abuse can occur in a

 parent-child relationship. The evidence presented at the hearing did not require the

 trial court to make specific written findings concerning abuse.

 4. Abuse of Discretion

¶ 33 Plaintiff argues that the trial court abused its discretion by not granting

 primary custody to Plaintiff. Plaintiff also contends that there are “no reasons

 supporting Plaintiff having even less visitation time with [Matthew] than he did prior

 to the two years he had exclusive care, custody and control of [Matthew].” We

 disagree.

¶ 34 Both the 2013 Custody Order and the August 2020 Custody Order granted the

 parties joint custody and awarded primary custody to Defendant. The 2013 Custody

 Order awarded Plaintiff physical custody of Matthew from 5 p.m. Thursday to 5 p.m.

 Sunday on “all weekends that [Defendant] must work,” Defendant would have

 physical custody the following weekend, and Plaintiff would again “exercise
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

 secondary physical custody of his son for the next two successive weekends[.]” The

 August 2020 Custody Order awarded Plaintiff visitation on the first, second, and

 fourth weekend of each month from 5 p.m. Friday to 7 p.m. Sunday. Each order

 permitted Plaintiff to have vacation time with Matthew upon written notice and

 established holiday visitation schedules providing for approximately equal visitation

 between the parties.

¶ 35 The trial court’s decision to adopt the custody arrangement in the August 2020

 Custody Order was not “manifestly unsupported by reason” or “so arbitrary that it

 could not have been the result of a reasoned decision.” Barton, 152 N.C. App. at 710,

 568 S.E.2d at 266 (quotation marks and citation omitted). The trial court’s findings

 of fact reflect that Defendant experienced a mental health crisis in 2018 which

 adversely affected her ability to care for Matthew. Defendant took steps to address

 her mental health issues, including undergoing two voluntary commitments and

 engaging in extensive psychiatric treatment, upon which she significantly improved.

 Defendant subsequently had successful visitation with Matthew and remained

 gainfully employed.

¶ 36 The trial court’s findings also reflect that Plaintiff had ongoing difficulties in

 co-parenting Matthew. The Initial Emergency Custody Order provided that

 “Defendant shall have supervised visitation at a time, location, frequency, and

 duration mutually agreed upon by the parties.” The trial court found, however, that
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

 “Defendant asked Plaintiff many times for expanded visits and a visitation schedule

 which Plaintiff refused.” The trial court further found that after entry of the Second

 Memorandum Order, “except for very limited exceptions, Plaintiff . . . only allowed

 Defendant supervised visitation with Matthew [outdoors] at Freedom Park, no

 matter the weather or the fact that Defendant had given birth to another child, and

 that child should not be in the open elements for four hours.” The trial court also

 found that Plaintiff’s “main complaint regarding the visitation between Defendant

 and [Matthew] was that the half-siblings were competitive with each other” and

 Plaintiff desired for Defendant to be the only person visiting with Matthew, “despite

 the fact that [Matthew] had a step-father and half-siblings that only saw him 4 hours

 each week.”

¶ 37 In light of these findings, the trial court did not abuse its discretion by entering

 the August 2020 Custody Order.4

 III. Conclusion

¶ 38 The trial court had jurisdiction to modify the 2013 Custody Order, did not fail

 to find a nexus between the change in circumstances and Matthew’s welfare, did not

 4 Plaintiff notes that in the August 2020 Custody Order, the trial court stated that “it

 is in the best interest and general welfare of [Matthew] that the Order entered on August 29,
 2018, be modified as hereinbelow memorialized.” No order was entered in this case on that
 date. However, where the trial court otherwise consistently referred to modification of the
 2013 Custody Order, this singular erroneous reference does not demonstrate that the trial
 court abused its discretion.
 TURNER V. OAKLEY

 2022-NCCOA-266

 Opinion of the Court

fail to address evidence of abuse, and did not abuse its discretion. We thus affirm the

August 2020 Custody Order.

 AFFIRMED.

 Judges GORE and JACKSON concur.